# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

T.J. SUTTON,

                Petitioner,                     Case Number: 2:09-CV-10616

v.                                           HON. NANCY G. EDMUNDS

LLOYD RAPELJE,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner T.J. Sutton filed a *pro se* petition for a writ of habeas corpus under 28

U.S.C. § 2254.  Petitioner, who is presently incarcerated at the Saginaw Correctional

Facility in Freeland, Michigan, challenges his convictions for armed robbery, felon in

possession of a firearm, and possession of a firearm during the commission of a felony,

second offense.  For the reasons set forth below, the Court denies the petition.

### I. Background

Petitioner's convictions arise from a robbery at a McDonald's restaurant in Detroit

on June 10, 2003.

Robert Anderson testified that he was at a McDonald's restaurant on June 10,

2003, when he heard an individual angrily demand to speak to a manager.  Anderson

observed the individual lift his shirt up.  The manager then handed money over to the

individual.  As he was exiting the restaurant, the individual stopped, removed a handgun

from his waistband, and stated, "you all think I'm playing."  Tr., Vol. II at 92-93.

Anderson testified the man then left the restaurant and drove off in a brown vehicle.

Anderson identified Petitioner as the individual with the handgun.

Dominic Haynes testified that she was employed at the McDonald's on the day of
the robbery.  She saw a man having an argument with the manager.  Haynes then saw the
man show the manager a handgun that was in his waistband.  The day after the robbery,
Haynes was shown a photographic lineup.  She identified an individual who was not
Petitioner as the perpetrator.  But, at trial, she identified Petitioner as the perpetrator and
said she was certain in her identification of him.

Paulette Green also testified that she was working at the McDonald's on the day of
the robbery.  A man she later identified as Petitioner approached her cash register,
displayed a gun and told her "this is a holdup."  *Id.* at 125-126.  Green summoned her
manager.  Her manager gave Petitioner money.  Before leaving, Petitioner pointed the
gun at other employees stationed behind the counter and told them not to move until he
had left.

Kenneth Golden testified that he was employed as a store manager at McDonald's
on June 10, 2003.  He responded to a request from a customer to see the manager.
Golden testified that the individual told him that "this is a robbery."  *Id.* at 139-140.  The
individual lifted his shirt, revealing a gun tucked in his waistband.  The individual ordered
Golden to give him all the money.  Golden opened the cash register and gave him
approximately $50.  While he was unable to identify Petitioner at a photo lineup, at trial,

2

Golden identified Petitioner as the perpetrator.

Police officer Ryan May testified that he received a radio report to be on the lookout for a champagne-colored Ford Taurus bearing license place number VQV 366 as it was believed to be related to a robbery at a McDonald's.  Officer May testified that he observed a Taurus meeting that description and bearing that license plate number at a gas station.  He and his partner ordered the driver out of the vehicle and handcuffed him.  A .38 caliber revolver was retrieved from between the seats.  The driver identified himself as T.J. Sutton.

Petitioner testified in his own defense.  He testified that he was driving his son's Ford Taurus because he had taken the vehicle for repairs.  He claimed that police beat him up before arresting him.  He denied any involvement in the robbery.

## II.  Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of armed robbery, felon in possession of a firearm, and possession of a firearm during the commission of a felony, second offense.  On December 19, 2003, he was sentenced to 23 years, 9 months to 50 years in prison for the armed robbery conviction, 3 years, 4 months to 5 years in prison for the felon-in-possession conviction, and two years in prison for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these claims:

    I.      The trial court erroneously ruled that he was competent to be tried, and/or the trial court failed to refer [Petitioner] for a competency evaluation, when the question of competency arose during trial after [Petitioner's] behavior and new information indicated that he was incompetent to stand trial at that time, thereby denying [Petitioner] due process pursuant to US Const. Ams V, XIV; and Mich Const. 1963, Art I, § 17.

    II.     The trial court committed reversible error in erroneously instructing the jury on the concept of reasonable doubt, thereby denying [Petitioner] due process pursuant to US Const. Ams V, XIV; and Mich Const. 1963, Art I, § 17.

The Michigan Court of Appeals affirmed his convictions. *People v. Sutton*, No. 253177 (Mich. Ct. App. Aug. 2, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the same claims raised in the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal, *People v. Sutton*, 474 Mich. 942 (Mich. Nov. 29, 2005), and denied Sutton's motion for reconsideration. *People v. Sutton*, 474 Mich. 1067 (Mich. Feb. 27, 2006).

In May 2006, Petitioner filed a motion for relief from judgment. He raised the following claims:

    I.      Petitioner was denied substantive due process of law by being tried and convicted while mentally incompetent to stand trial.

    II.     Petitioner was denied the effective assistance of trial counsel because of his failure to investigate defendant's competence to stand trial.

    III.    Petitioner was denied effective assistance of appellate counsel because of his failure to raise the issues noted above in Petitioner's appeal of right.

    IV.    Petitioner meets the requirements of Mich. Ct. R. 6.508(D).

The trial court denied the motion.  *People v. Sutton*, No. 03-007511-01 (Wayne County Cir. Ct. Oct. 31, 2006).

Petitioner sought leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court from the denial of his motion for relief from judgment.  Both state appellate courts denied leave to appeal.  *People v. Sutton*, No. 280802 (Mich. Ct. App. Apr. 16, 2008); *People v. Sutton*, 482 Mich. 1062 (Mich. 2008).

Petitioner then filed the pending petition.  He raises these claims:

I.      Substantive due process violation – incompetency.

II.     Ineffective assistance of trial counsel.

III.    Ineffective assistance of appellate counsel.

IV.     Lower court judge's abuse of discretion.

V.      Trial court's erroneous jury instruction.

### III.  Standard

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute

permits a federal habeas court to 'grant the writ if the state court identifies the correct

governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)

(*quoting Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state

court's application of [Supreme Court] precedent 'unreasonable,' the state court's

decision must have been more than incorrect or erroneous.  The state court's application

must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations

omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

on the correctness of the state court's decision."  *Harrington v. Richter*, __ U.S. __, 131

S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme

6

malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th

7

Cir. 1998).

## IV.  Discussion

### A.  Competency Hearing

In his first claim, Petitioner argues that the trial court erred in denying his request

for a competency hearing.

The Due Process Clause of the Fourteenth Amendment prohibits the criminal

prosecution of a defendant who is not competent to stand trial.  *Medina v. California*, 505

U.S. 437, 439 (1992).  If, at any point, "before or during trial 'sufficient doubt' arises

about a defendant's competence – 'the capacity to understand the nature and object of the

proceedings against him, to consult with counsel, and to assist in preparing his defense' –

the trial court should order a competency hearing."  *Cowans v. Bagley*, 639 F.3d 241, 247

(6th Cir. 2011), *quoting Drope v. Missouri*, 420 U.S. 162, 180 (1975).  There are "no

fixed or immutable signs" of incompetence "which invariably indicate the need for

further inquiry to determine fitness to proceed."  *Drope* 420 U.S. at 180.  "[T]he standard

is a high one, and the relevant factors – 'evidence of a defendant's irrational behavior, his

demeanor at trial, and any prior medical opinion on competence' – 'are difficult to

evaluate.'"  *Cowans,* 639 F.3d at 247 (6th Cir. 2011), *quoting Drope*, 420 U.S. at 180.

In *Cowans v. Bagley*, 639 F.3d 241, 247 (6th Cir. 2011), the Sixth Circuit Court of

Appeals, on habeas review of a capital case, considered whether the petitioner's due

process rights were violated by the state trial court's failure to order a competency

8

examination based upon the petitioner's behavior before and during the trial, and during the mitigation phase.  The behavior that the petitioner, Cowans, argued necessitated a competency evaluation included the following: at a pre-trial hearing, when the trial court denied Cowans' request for a second substitute counsel, Cowans asked to be removed from the hearing; when the jury read its guilty verdict, Cowans became verbally abusive and challenged the jurors to look him in the eye, leading the judge to order Cowans removed from the courtroom; Cowans asked not to be present during the mitigation phase; he disabled the closed circuit television provided to allow him to view the proceedings; and Cowans ordered his attorney not to present any mitigating evidence.  *Id.* at 245-46.

The Sixth Circuit held that Cowans' behavior did not suggest that he was incompetent, that is, "incapable of understanding the nature of the charges against him or assisting in his defense."  *Id.* at 247.  Cowans behavior, instead, evidenced an understanding of the proceedings because they were precipitated by negative trial developments.  His behavior, the Court reasoned, "could be read in one of two ways: as evidence of mental incompetence or of an angry, hostile personality."  *Id.*  The trial court, which had the benefit of interacting with Cowans, "concluded that he acted out of pique, not out of mental incompetence."  *Id.* at 247-48.  The Court of Appeals held that the trial Court's decision was a reasonable one.

In *United States v. Shan Wei Yu*, 484 F.3d 979 (8th Cir. 2007), the Eighth Circuit Court of Appeals held that a defendant's repeated complaints about his attorneys,

9

including that one attorney pressured him to plead guilty, evidenced that the defendant understood the case against him and was capable of consulting with his attorneys. *Id.* at 985. The Court of Appeals, reviewing the case on direct appeal, noted that the district court judge observed the defendant testify and directly conversed with him. *Id.* The fact that the defendant was taking three medications (Prozac, Ativan, and Seroquel) did not require a competency hearing. *Id.*

In this case, the Michigan Court of Appeals held that the record did not support Petitioner's argument that a competency evaluation should have been ordered. The Michigan Court of Appeals recognized that the Due Process Clause requires that a defendant understand the charges against him and is able to assist in his own defense. *Sutton*, slip op. at 1-2. The state court, citing *Drope v. Missouri*, 420 U.S. 162 (1975), recognized that a court need not rely on defense counsel to request a competency evaluation, but, instead, may rely on the its own observations of defendant's demeanor at trial, evidence of defendant's irrational behavior, and any prior medical opinion on competence, to determine whether further inquiry is required. *Id.* The state court concluded that, considering all the factors discussed in *Drope*, a competency evaluation was not warranted, reasoning as follows:

> In this case, there is no existing medical opinion regarding defendant's competence. The record showed that defendant had been diagnosed with depression, but there was no evidence that he was suffering from the effects of that disorder at the time of trial. He had been hospitalized briefly the day before trial and treated with diphenhydramine, a medication that appears to be unrelated to the treatment of mental illness. 2 Schmidt, Attorneys' Dictionary of Medicine (New York: Matthew Bender & Co, 2000), p.

10

> D-146.  The fact that defendant was treated with this medication is consistent with counsel's representation that defendant was hospitalized due to a reaction to some other medication.
>
> There is nothing in the record to suggest that defendant's demeanor at trial was anything other than normal except for the brief outburst which led to his temporary removal from the courtroom.  That outburst appeared to have been prompted by an angry reaction to the court's refusal to adjourn trial, as opposed to delusional thinking.  Counsel never claimed that defendant could not communicate effectively with her, and the record showed that after defendant calmed down, he was able to assist counsel in presenting his defense and did in fact testify.  Based on the record presented, we find that the trial court did not abuse its discretion in finding that there was not a bona fide doubt regarding defendant's competence.

*Sutton*, slip op. at 2.

The state court's holding was a reasonable determination in view of the relevant circumstances.  As the state court noted, Petitioner's outburst was motivated by an adverse court ruling, evidencing an understanding of the proceedings.  Petitioner's testimony at trial showed him to be capable of following and understanding questioning and responding in a relevant, coherent manner.  He did not have further outbursts.  The trial court, having the benefit of observing and interacting with Petitioner, concluded that Petitioner was not having any difficulty communicating with counsel or assisting in his own defense.   The trial court concluded that the situation simply did not warrant a competency evaluation.  That was a reasonable determination on this record.

### B.  Alleged Ineffective Assistance of Trial and Appellate Counsel

Petitioner argues that his trial attorney was ineffective for failing to investigate his case generally, and, more specifically, for failing to investigate materials supporting his

11

competency. He also alleges that appellate counsel was ineffective for failing to raise this issue on direct appeal.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in

12

the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at __, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at __, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, __ U.S. __, 131 S. Ct. at 788.

The last court to issue a reasoned opinion regarding Petitioner's ineffective assistance of counsel claim was the trial court, in its opinion denying the motion for relief

from judgment and its opinion denying Petitioner's motion for reconsideration.  The trial court held that Petitioner had failed to establish ineffective assistance of counsel because he failed to show that counsel should have investigated further or that any true question regarding Petitioner's competence to stand trial existed.

"[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchison v. Bell*, 303 F.3d 720, 748-49 (6th Cir.2002) (*citing Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997) and *Martin v. Mitchell*, 280 F.3d 594, 608 (6th Cir. 2002)).  The state court's opinion is neither contrary to nor an unreasonable application of *Strickland*. Petitioner argues that because he was taking an antidepressant at the time of trial, he was incompetent to stand trial.  Most of the materials Petitioner submits predate his trial by approximately a decade.  Their relevance to his competency at the time of trial is questionable.  In addition, Petitioner provides a two-page document summarizing a trip to the emergency room the day before his trial commenced.  He was diagnosed with depression, with no suicidal or homicidal psychotic features.  It is not surprising that, on the eve of a criminal trial, a defendant would feel depressed and complain of sleeplessness.  Defense counsel moved for a competency evaluation, but the motion was denied.  Petitioner has failed to show what further evidence defense counsel could have obtained and presented which may have persuaded the court to order a competency evaluation.  The state court's conclusion that counsel was not ineffective in not

14

investigating this issue further is not contrary to or an unreasonable application of Supreme Court precedent.

Petitioner also argues that appellate counsel was ineffective in failing to raise ineffective assistance of trial counsel on direct appeal. The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner has failed to show that his ineffective assistance of counsel claim was potentially meritorious. Therefore, Petitioner cannot show that his appellate attorney was ineffective for failing to raise them on direct appeal.

## C. Denial of Motion for Evidentiary Hearing

Next, Petitioner argues that the trial court violated his right to due process because the court denied his request for an evidentiary hearing on collateral review.

Federal habeas corpus relief is available only to persons being held in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). It is not a remedy for an alleged violation of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). States "have no obligation to provide" post-conviction review under the Constitution. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (citation omitted).

15

Since states are not required to provide such review, federal courts have held that challenges to a state's post-conviction procedures are not cognizable as independent claims in habeas corpus proceedings, because such claims "address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby v. Dutton*, 794 F.2d 245, 247, 248 (6th Cir. 1986). *See also Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007) ("[E]rrors in post-conviction proceedings are outside the scope of federal habeas corpus review."); *Vail v. Procunier*, 747 F.2d 277, 277 (5th Cir.1984) (holding that "[i]nfirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief.").

Therefore, Petitioner's claim challenging procedures related to his post-conviction collateral review proceedings in state court is not cognizable on federal habeas review.

### D.  Jury Instruction on Reasonable Doubt

Finally, Petitioner objects to the jury instruction on reasonable doubt.  The trial

court gave the following reasonable doubt instruction:

> The standard of proof, again, is reasonable doubt, proof beyond a
> reasonable doubt.  It is not proof beyond all doubt.  It is not proof beyond a
> shadow of a doubt.  It is proof beyond a reasonable doubt.
>
> Now, a reasonable doubt is the kind of doubt that you can assign a reason
> for having the doubt.  It's based on reason and common sense.  A fair,
> honest, and reasonable doubt.
>
> If you can say that you have an abiding conviction to a moral certainty, then
> you have no reasonable doubt.  If you do not have an abiding conviction to
> a moral certainty, you do have a reasonable doubt.
>
> In other words, a reasonable doubt is a fair, honest, and reasonable doubt.  It
> is not a vain, imaginary, flimsy, a hunch, it is not a feeling, it is not a
> possibility of innocence.  It's a fair, honest, and reasonable doubt.  The kind
> of doubt that you can assign a reason for having.  The kind of doubt that
> would make you hesitate before making an important decision.

Tr., Vol. III, 103-04.

Petitioner argues that the court's reference to assigning a reason to the doubt

improperly shifted the burden of proof to him.  He further argues that use of the phrase

"moral certainty" also shifted the burden of proof.  Respondent argues that this claim is

procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default

issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d

212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

"Judicial economy might counsel giving the [other] question priority, for example, if it

were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).  The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Ibid*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

Where the state has accused an individual of violating its criminal laws and seeks to punish him, "the Due Process Clause of the Fourteenth Amendment 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Cage v. Louisiana*, 498 U.S. 39, 39 (quoting *Winship*, 397 U.S. at 364).  *See also Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979).  "This reasonable-doubt standard plays a vital role in the American

18

scheme of criminal procedure.  Among other things, it is a prime instrument for reducing

the risk of convictions resting on factual error." *Cage*, 498 U.S. at 89-90.  When

determining whether a particular definition of reasonable doubt violated a defendant's due

process rights, "the proper inquiry is not whether the instruction 'could have' been

applied in an unconstitutional manner, but whether there is a reasonable likelihood that

the jury did so apply it." *Victor v. Nebraska*, 511 U.S. 1, 6 (1994).  Since "the

Constitution does not require that any particular form of words be used in advising the

jury of the government's burden of proof," the instructions must "correctly convey the

concept of reasonable doubt" when "taken as a whole." *Id.*

In *Burton v. Bock*, 187 F. App'x 465 (6th Cir. 2006), the Sixth Circuit Court of

Appeals considered whether a definition of reasonable doubt as one the jury "could assign

a true substantive reason to" increased the level of doubt necessary to acquit and,

consequently, also decreased the prosecutor's burden of proof.  The Court of Appeals

held that the instructions, considered as a whole, did not improperly lower the

prosecutor's burden of proof.  *Id.*  Other courts also have held that the "assign a reason"

instruction does not allow a conviction on lesser proof than the reasonable-doubt standard

requires.  *See Robinson v. Callahan*, 694 F.2d 6 (1st Cir. 1982) (holding that instruction

defining a reasonable doubt as "a doubt for which you can give a reason" did not warrant

habeas relief); *United States v. Harris*, 346 F.2d 182, 184-85 (4th Cir. 1965) ("assign a

reason" language is not error); *Hawkins v. Birkett*, No. 2:08-CV-12281, 2011 WL 87256,

*17 (E.D. Mich. Jan. 11, 2011) (holding that the instruction that a reasonable doubt is

19

merely "[a] doubt which you can assign a reason for having" does not decrease

prosecutor's burden of proof).  When viewed in the context of the instructions as a whole,

the instruction that the jurors should be able to assign a reason to their doubt did not

lower the prosecution's burden of proof because it simply conveyed to the jury that a

reasonable doubt must be based on reason, as opposed to fancy, whim, or a hunch.

Petitioner also objects to the use of the language "moral certainty," arguing that the

phrase invited jurors to return a verdict based on something other than the evidence

before them.  In *Cage v. Louisiana*, 498 U.S. 39 (1990) (per curiam), the Supreme Court

found a jury instruction on reasonable doubt that referenced "a moral certainty"  to be

unconstitutional.[1]  Id. at 40.  The Supreme Court "held that the instruction allowed a

reasonable juror to find guilt based on a degree of proof below that required by the

Constitution because it required a 'moral certainty,' rather than an 'evidentiary certainty,'

that the defendant was guilty, and it suggested that jurors needed an 'actual substantial

doubt' or a 'grave uncertainty,' instead of a 'reasonable doubt,' to acquit.  *Austin v. Bell*,

126 F.3d 843, 847 (6th Cir. 1997), *quoting Cage*, at 40-41, 44.  Use of the term "moral

certainty" does not, of itself, render a "reasonable doubt" instruction unconstitutional.

---

[1]  The relevant instruction in *Cage* provided:

It must be such doubt as would give rise to a grave uncertainty, raised in your
mind by reasons of the unsatisfactory character of the evidence or lack thereof. A
reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It
is a doubt that a reasonable man can seriously entertain. What is required is not an
absolute or mathematical certainty, but a moral certainty.

*Cage*, 498 U.S. at 40.

20

*Victor*, 511 U.S. at 15-17.  The phrase "moral certainty" is constitutionally permissible where the rest of the instruction "lends content to the phrase," and indicates the government's proper burden of proof.  *Austin*, 126 F.3d at 847 (citations omitted).

The reasonable doubt jury instruction in this case informed the jury that its verdict had to be based on the evidence, the lack of evidence, or on the unsatisfactory nature of the evidence.  The instructions, considered as a whole, did not suggest a lower standard of proof than that required by due process.  The Court concludes that the instruction accurately conveyed the concept of reasonable doubt.

### V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus

relief should be granted.  Therefore, the Court will deny a certificate of appealability.

## VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas

corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  February 28, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record
on February 28, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

22